## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**RIGOBERTO MEJIA, a/k/a "NINJA"** | **Criminal No. 15-10338-FDS** |

### SENTENCING MEMORANDUM OF THE UNITED STATES

Rigoberto Mejia a/k/a "Ninja" faces sentencing for racketeering conspiracy in furtherance of the MS-13 criminal enterprise and for his role in the murder of a 16-year-old boy on a public street in East Boston.  Three of Mejia's fellow MS-13 members—Edwin Gonzalez a/k/a "Sangriento," Edwin Diaz a/k/a "Demente Westers", and Jairo Perez a/k/a "Seco"—stabbed and slashed the victim dozens of times with large knives before Mejia ran up and fired multiple gunshots into the victim's body. Mejia and the others then ran away, leaving the 16-year-old boy bleeding to death on the sidewalk of a densely populated, residential street.

For Mejia's participation in this brutal murder, the Court should sentence Mejia to ***330 months in prison to be followed by 60 months of supervised release***.  Mejia will also be subject to deportation upon the completion of his sentence.

## I.    The Binding Plea Agreement Between the Parties.

On April 23, 2018, Mejia pleaded guilty pursuant to a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C).  In relevant part, the key provisions of the plea agreement are as follows:

*First*, as to the application of the Sentencing Guidelines, (i) the parties agreed that the defendant's racketeering activity involved a first degree murder, resulting in a base offense level of 43; and (ii) the parties agreed that based on the defendant's prompt acceptance of responsibility, the defendant would receive a three level reduction to his offense level. *See* Plea Agreement, § 4.

*Second*, the parties agreed to propose to the Court that a reasonable and appropriate disposition of the case include a sentence of 330 months in prison to be followed by 60 months of supervised release. *Id.* at § 5.

*Third*, the defendant waived his right to appeal both his conviction and his sentence if the Court imposed the sentence contemplated by the Plea Agreement. *Id.* at § 6.

## II.   **The Proposed Sentence is a Guideline Sentence.**

Based on the evidence and the PSR submissions of the parties, the Probation Office calculated the defendant's Guideline Sentencing Range as 292 to 365 months in custody and 2 to 5 years of supervised release. *See* PSR, ¶¶ 85, 91.

There are no objections to the Probation Office's calculations and both sides agree that this is the applicable Guideline Sentencing Range.  The proposed period of incarceration contemplated by the Plea Agreement (330 months) is above the mid-point of the Guideline period of incarceration (292 to 356 months), and the proposed period of supervised release (5 years) is at the high end of the Guideline period of supervised release (2 to 5 years).

III.    **The Sentence Contemplated by the Plea Agreement is Reasonable.**

In recent months, this Court has seen and heard significant evidence about the murder of Cristofer de la Cruz by Mejia and his co-defendants.  Among other things, the Court presided over the multi-week trial of co-defendant Edwin Gonzalez a/k/a "Sangriento" (where Gonzalez was held responsible for this murder) and presided over the sentencing of co-defendant Edwin Diaz a/k/a "Demente" (where the Court imposed a 35-year term of imprisonment).  In two recent sentencing memoranda— for the recent sentencing of Diaz and the upcoming sentencing of Jairo Perez a/k/a "Seco"—the government discussed this murder in extensive detail and highlighted the various reasons why this crime merits a significant period of incarceration.  *See generally* Dkt. No 2634 (Govt. Sentencing Memo. as to Diaz) and Dkt. No. 2722 (Govt. Sentencing Memo. as to Perez).  To minimize repetition, the government incorporates by reference the arguments contained in those sentencing memoranda, and the government focuses here on certain salient details regarding Mejia not previously highlighted for the Court.

**Mejia's Relative Involvement in the Murder**.

Much of the prior discussions on the De la Cruz murder have [rightfully] focused on the use of the large knives/machetes by the other three murderers and the horrific injuries they inflicted on the victim, which the Medical Examiner described as approximately 48 sharp force injuries, including numerous wounds on the victim's skull and a nearly-severed hand.  While those injuries are certainly notable, the Court should not overlook Mejia's involvement in the murder.  Not content with simply

watching as his three fellow gang members were butchering the victim with large knives, Mejia apparently ran up and fired multiple gunshots into the victim from nearly point-blank range.

Although it is not possible to ascertain the sequence of the wounds or confirm the trajectories of the gunshots, the evidence indicates that Mejia fired multiple shots into the victim's torso (most likely, into the victim's back).[1]  This chart from the Medical Examiner summarizes the relative positioning of the gunshot wounds:



---

[1]  For example, the Medical Examiner's notes include the following description: "A gunshot entrance wound of the right upper back (labeled "3" on charts and graphs) is located approximately 13 5/8th inches below the top of the head and 2 inches to the right of midline....  There is an exit wound of the right chest (labeled "1" on charts and graphs), located approximately 15 inches below the top of the head and 1 7/8th inches to the right of of midline....  The direction of the bullet trajectory is back to front, very slightly right to left, and slightly downwards."

The evidence (including the retrieved shell casings and audio from surveillance cameras) indicates that Mejia likely fired three shots, and the wounds reflected in the chart above reflect both entrance and exit wounds.  The gunshot wounds leave no doubt as to Mejia's intent in firing the shots—they demonstrate an especially callous attempt to finish the job started by his three fellow gang members who were stabbing the victim as he struggled for his life.

### Mejia's Relative Involvement in the MS-13 Conspiracy.

Having noted Mejia's involvement in the De la Cruz murder, it is also important to note the very limited information in the government's possession about Mejia's role or involvement in the broader MS-13 conspiracy.  Unlike most of the other defendants in the case, Mejia was never captured on tape and there were relatively few recordings of other defendants talking about Mejia.  (Indeed, other than a few recordings after the De la Cruz murder where there was some limited mention of "Ninja," there were almost no prior mention or evidence about his involvement in MS-13.)  The government's investigation into the TLS clique also did not result in the collection of evidence or intelligence about Mejia prior to this murder.  In fact, the government had such little information on Mejia that a different individual was initially identified and arrested as "Ninja" during the large MS-13 takedown.  Put differently, unlike other defendants where evidence or intelligence reports about prior bad acts may have factored into the government's sentencing recommendation, the government knows relatively little about Mejia's activities and involvement in MS-13 other than his involvement in this murder.

## Reasons for Mejia to Receive Lower Sentence Than Other Murderers.

Finally, the government highlights certain factors that support a lower sentence for Mejia than the other individuals who committed the De la Cruz murder.

*First*, the weight of the evidence against Mejia (Ninja) was materially different from the evidence against Gonzalez (Sangriento), Diaz (Demente), and Perez (Seco). For example, there were no admissions by Mejia, either on tape or to any cooperators. In contrast, the other three were all captured on tape discussing the murder. The forensic evidence against Mejia was also much weaker if not nonexistent. In contrast, there was DNA evidence tying Gonzalez and Diaz to the murder (the clothes worn during the murder), and Perez buried the clothes containing the DNA of Gonzalez and Diaz. Lastly, there was a misidentification in this case that led to a different individual initially being identified as the person who committed this murder. This misidentification was quickly remedied and there is no doubt as to Mejia's participation and involvement in this murder. However, these evidentiary issues influenced the government's evaluation of the case.

*Second*, Mejia is not being assessed a Guideline enhancement for vulnerable victim. As stated above, the government knows very little about Mejia and does not have any evidence indicating what, if anything, Mejia knew about the victim at the time of the murder. In contrast, the other murderers either knew or should have known the victim's age because they had communicated with the victim, known him from school, etc. The practical import is that Mejia's Guideline Range is lower than the Guideline Range for the other murderers by two levels.

6

*Third*, Mejia was the first of the four murderers to plead guilty, and Mejia's plea allowed the government to streamline its case and focus on the other defendants.

Given all of the above, a jointly-recommended sentence that is above the midpoint of Mejia's Guideline Range is appropriate and reasonable.

## IV.   <u>Conclusion</u>

The murder of a 16-year-old boy to further the mission of a violent gang deserves a significant period of incarceration.   For the reasons above, the Court should sentence the defendant to ***330 months in custody followed by 60 months of supervised release.***

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   <u>/s/ Kunal Pasricha</u>
Kunal Pasricha
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that the foregoing document was filed through the Electronic Court Filing (ECF) system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

<u>/s/ Kunal Pasricha</u>
KUNAL PASRICHA
Assistant United States Attorney